Filed 1/29/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B301972 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA048652) |
| v. | |
| VINCENT HWANG, | |
| Defendant and Appellant. | |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Steven D. Blades, Judge. Reversed with directions.

Juvenile Innocence and Fair Sentencing Clinic, Loyola Law School and Christopher Hawthorne; Panahpour Law and Nilou Panahpour; Andrues/Podberesky and Vicki I. Podberesky for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo and Nancy Lii Ladner, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

Defendant Vincent Hwang appeals from the trial court's denial of his request to have his case transferred to juvenile court pursuant to the Public Safety and Rehabilitation Act of 2016 (Proposition 57) and Senate Bill No. 1391.  Defendant contends the trial court erred in concluding that he was not entitled to a transfer because his criminal judgment was final at the time of the proposition's and bill's passage.  We agree and therefore reverse.

# II.  BACKGROUND

A.    *Conviction and Initial Appeal*

In October 2001, a jury found defendant guilty of two counts of attempted murder (Pen. Code, §§ 664, 187, subd. (a));[1] assault with a semiautomatic firearm (§ 245, subd. (b)); carrying a loaded firearm (§ 12031, subd. (a)(1)); possession of an assault weapon (§ 12280, subd. (b)); possession of a silencer (§ 12520); possession for sale of a controlled substance (Health & Saf. Code, § 11378); possession of ingredients to make a destructive device (§ 12312); and shooting at an occupied building (§ 246).  The jury also found numerous special allegations to be true, including allegations that supported the imposition of firearm enhancements.  Defendant committed his crimes on May 20, 2000, when he was 15 years old.  He was arrested within

---

[1]    Further statutory references are to the Penal Code unless otherwise indicated.

five days of his crimes. (*People v. Hwang* (Jan. 23, 2003, B156960) [nonpub. opn.].)

The trial court sentenced defendant to 74 years to life in prison. On January 23, 2003, this court affirmed the judgment. (*People v. Hwang*, *supra*, B156960.) Our Supreme Court denied defendant's petition for review on April 9, 2003.

B.     *Section 1170, Subdivision (d) Petition*

On August 27, 2018, the trial court received a letter from the Secretary of the California Department of Corrections and Rehabilitation (Department) recommending that defendant's sentence be recalled and he be resentenced pursuant to section 1170, subdivision (d) because his sentence might be unlawful under *People v. Rodriguez* (2009) 47 Cal.4th 501 (*Rodriguez*).

On April 9, 2019, defendant filed a "MOTION TO MODIFY SENTENCE/STRIKE ALLEGATION PURSUANT TO [*Rodriguez*] and MOTION FOR RECONSIDERATION." Defendant contended that he was entitled to a resentencing hearing and the benefit of Senate Bill No. 620, which gave the sentencing court discretion to strike defendant's firearm enhancements. He also argued that he was entitled to a transfer hearing in the juvenile court pursuant to Proposition 57 and Senate Bill No. 1391.

On June 6, 2019, the Los Angeles County District Attorney (District Attorney) filed an opposition. The District Attorney conceded that it was likely defendant was entitled to the benefit of Senate Bill No. 620, but recommended that the trial court structure defendant's sentence so he still received a term of 74 years to life. The District Attorney also argued that defendant

3

was not entitled to relief under Proposition 57 because his conviction was final on April 9, 2003, long before Proposition 57 was enacted.

On September 25, 2019, the trial court conducted a hearing pursuant to section 1170, subdivision (d).[2] The court stayed the firearm enhancement on count three, which resulted in a new sentence of 64 years to life. The court rejected defendant's other arguments, stating: "You know, you've got a life sentence. I can't do anything about that . . . ." Defendant timely appealed.

## III. DISCUSSION

A. *Applicable Law*

1. <u>Proposition 57 and Senate Bill No. 1391</u>

On November 8, 2016, the electorate passed Proposition 57, which amended Welfare and Institutions Code section 707. Prior to the passage of Proposition 57, "prosecutors were permitted, and sometimes required, to file charges against a juvenile directly in criminal court, where the juvenile would be treated as

---

[2] Because the judge who presided over defendant's trial had retired, the matter was heard by a different judge.

On March 28, 2019, defendant filed a petition for writ of habeas corpus. Defendant argued, among other things, that he was entitled to a hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*). The trial court granted the petition at the September 25, 2019, hearing. The court had not yet conducted the *Franklin* hearing by the time defendant filed his notice of appeal. (See *People v. Lizarraga* (2020) 56 Cal.App.5th 201, 204 [*Franklin* hearing does not affect finality of judgment].)

4

an adult." (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 304–305 (*Lara*).) Proposition 57, however, eliminated the ability of prosecutors to file charges against juveniles directly in a court of criminal jurisdiction (adult court). (*Id.* at p. 305.) Under Proposition 57, "'[c]ertain categories of minors . . . can still be tried in [adult court], but only after a juvenile court judge conducts a transfer hearing to consider various factors.'"[3] (*Id.* at p. 306.)

More recently, the Legislature amended Proposition 57 with Senate Bill No. 1391 (Stats. 2018, ch. 1012, § 1, eff. Jan. 1, 2019),[4] which "eliminated prosecutors' ability to seek transfer of 14[-] and 15[-]year[-]olds from juvenile court to criminal court unless the minor is 'not apprehended prior to the end of juvenile court jurisdiction.'" (*People v. Superior Court (S.L.)* (2019) 40 Cal.App.5th 114, 119.) Specifically, Welfare and Institutions Code section 707, subdivision (a)(2) provides, "In any case in which an individual is alleged to be a person described in [Welfare and Institutions Code s]ection 602 by reason of the violation, when he or she was 14 or 15 years of age, of any offense

---

[3] The crimes for which a 14- or 15-year-old can be tried in adult court include attempted murder and assault with a firearm. (Welf. & Inst. Code, § 707, subd. (b)(12) & (13).)

[4] There is a split of authority regarding the constitutionality of this amendment. (Compare *O.G. v. Superior Court* (2019) 40 Cal.App.5th 626, 629, review granted Nov. 26, 2019, S259011 [finding Senate Bill No. 1391 unconstitutional] with *People v. Superior Court (T.D.)* (2019) 38 Cal.App.5th 360, 364–365, review granted Nov. 26, 2019, S257980 [finding Senate Bill No. 1391 constitutional].) For purposes of this appeal, the Attorney General concedes that Senate Bill No. 1391 is constitutional.

listed in subdivision (b), but was not apprehended prior to the end of juvenile court jurisdiction, the district attorney or other appropriate prosecuting officer may make a motion to transfer the individual from juvenile court to a court of criminal jurisdiction."

2.     Section 1170, subdivision (d)(1)

At the time the Department sent its August 27, 2018, recommendation, section 1170, subdivision (d)(1)[5] provided in pertinent part:  "When a defendant subject to this section or subdivision (b) of [s]ection 1168 has been sentenced to be imprisoned in the state prison . . . and has been committed to the custody of the secretary . . . , the court may . . . at any time upon the recommendation of the secretary or the Board of Parole Hearings in the case of state prison inmates . . . , recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence."  (Stats. 2018, ch. 36, § 17.)

---

[5]     Section 1170, subdivision (d) was subsequently amended twice.  (Stats. 2018, ch. 1001, § 1; Stats. 2020, ch. 29, § 14.) Those amendments do not affect our analysis.

6

B.    *Analysis*

      1.     <u>Retroactivity of Proposition 57 and Senate Bill</u>
            <u>No. 1391</u>

"'The Legislature ordinarily makes laws that will apply to events that will occur in the future.  Accordingly, there is a presumption that laws apply prospectively rather than retroactively.  But this presumption against retroactivity is a canon of statutory interpretation rather than a constitutional mandate.  [Citation.]  Therefore, the Legislature can ordinarily enact laws that apply retroactively, either explicitly or by implication.  [Citation.]  In order to determine if a law is meant to apply retroactively, the role of a court is to determine the intent of the Legislature, or in the case of a ballot measure, the intent of the electorate.'" (*Lara*, *supra*, 4 Cal.5th at p. 307; *People v. Padilla* (2020) 50 Cal.App.5th 244, 250–251.)  Our Supreme Court applies the doctrine of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), to determine retroactivity in criminal law:  "'The *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.'" (*Lara, supra*, 4 Cal.5th at p. 308.)

Applying *Estrada*, our Supreme Court has concluded that Proposition 57 is retroactive:  "The possibility of being treated as a juvenile in juvenile court—where rehabilitation is the goal—rather than being tried and sentenced as an adult can result in dramatically different and more lenient treatment.  Therefore,

Proposition 57 reduces the possible punishment for a class of persons, namely juveniles. For this reason, *Estrada*'s inference of retroactivity applies. As nothing in Proposition 57's text or ballot materials rebuts this inference, we conclude this part of Proposition 57 applies to all juveniles charged directly in adult court whose judgment was not final at the time it was enacted." (*Lara, supra,* 4 Cal.5th at pp. 303–304.) Thus, if defendant's judgment was not final when Proposition 57 was enacted, he is entitled to the retroactive application of that proposition.

Senate Bill No. 1391 effectively broadens the ameliorative benefit of Proposition 57 to 14- and 15-year-olds by prohibiting prosecuting attorneys from moving to transfer individuals who commit certain offenses when they were 14 or 15 years old to adult court, unless they were "not apprehended prior to the end of juvenile court jurisdiction." (Welf. & Inst. Code, § 707, subd. (a)(2).) Such ameliorative changes to criminal law are entitled to broad application. (Cf. *Lara,* s*upra,* 4 Cal.5th at p. 309 ["Proposition 57 is an 'ameliorative change[ ] to the criminal law' that we infer the legislative body intended 'to extend as broadly as possible'"].) Accordingly, Senate Bill No. 1391 applies retroactively to defendants whose judgments are not yet final.

That this defendant is now over 25 years old does not change our conclusion that he is entitled to the retroactive benefit of Welfare and Institutions section 707, subdivision (a)(2), if his conviction was not final when Senate Bill No. 1391 was enacted. (See Welf. & Inst. Code, § 607 [juvenile court jurisdiction generally ends at age 25 at the latest]; *K.C. v. Superior Court* (2018) 24 Cal.App.5th 1001, 1011.) We disagree with the dissent's view that Welfare and Institutions Code section 707, subdivision (a)(2)'s language excluding those juveniles who were

8

"not apprehended prior to the end of juvenile court jurisdiction" from Senate Bill No. 1391's ameliorative benefit suggests a legislative intent to allow prosecutors to make transfer motions for defendants such as the instant defendant.  Here, defendant was apprehended when he was still 15 years old and therefore Welfare and Institutions Code section 707, subdivision (a)(2)'s exclusion, by its plain terms, does not apply to him.  (See *People v. Maultsby* (2012) 53 Cal.4th 296, 299 ["In interpreting a statute to ascertain the Legislature's intent, we give the words their usual and ordinary meaning.  The statute's plain language controls unless its words are ambiguous"].)

Further, in our view, the legislative history of Senate Bill No. 1391 does not support the dissent's conclusion that the Legislature must have impliedly intended to exclude defendant from the bill's ameliorative benefit.  Indeed, the legislative history does not specify *why* the "not apprehended" clause was included in Welfare and Institutions Code section 707, subdivision (a)(2).  Moreover, nothing in the legislative history of Senate Bill No. 1391 rebuts the *Estrada* inference of retroactivity.  Although the dissent correctly notes that one purpose of Senate Bill No. 1391 is to rehabilitate 14- and 15-year-old offenders in the juvenile justice system, another purpose of that bill is to acknowledge the lesser culpability of these youthful offenders.  According to the author of Senate Bill No. 1391: "Currently, in California, youth ages 14 and 15 who commit crimes can be tried as adults and sentenced to adult prison.  This practice was started in the 90's, a time in California history where the state was getting 'tough on crime,' but not smart on crime.  Back then, society believed that young people were fully developed at around age 14.  Now, research has debunked that

9

myth and cognitive science has proven that children and youth who commit crimes are very capable of change." (Sen. Com. on Public Safety, 3d reading analysis of Sen. Bill No. 1391 (2017–2018 Reg. Sess.) as amended Aug. 20, 2018, pp. 3–4.) Thus, in addition to emphasizing rehabilitation, Senate Bill No. 1391 furthers the intent of Proposition 57 "by narrowing the class of minors who would be subject to a lengthy prison sentence in an adult institution." (*People v. Superior Court* (*Alexander C.*) (2019) 34 Cal.App.5th 994, 1002 (*Alexander C.*); see also *People v. Superior Court* (*K.L.*) (2019) 36 Cal.App.5th 529, 541 ["[Senate Bill No.] 1391 furthers the stated purpose and intent of Proposition 57 to have fewer youths removed from the juvenile justice system"].) Although defendant here may no longer receive rehabilitation in the juvenile justice system, he could receive the benefit of a lesser sentence based on his lesser culpability when he committed his crimes as a 15-year-old.

2. <u>Effect of Resentencing Under Section 1170, subdivision (d)(1)</u>

As we discuss above, both Proposition 57 and Senate Bill No. 1391 apply to judgments that were not final at the time of their enactment. Here, defendant's judgment was final in 2003, when the California Supreme Court denied review of his initial appeal. We therefore next consider whether the court's resentencing of defendant pursuant to section 1170, subdivision (d) reopened the finality of that judgment, which is an issue of statutory interpretation that we review de novo. (*People v. Smith* (2019) 35 Cal.App.5th 399, 403.)

10

We disagree with the Attorney General's position that finality, for purposes of retroactive application of ameliorative changes to the law, is limited to cases that are "not yet final on a first appeal." "'In a criminal case, judgment is rendered when the trial court orally pronounces sentence.' (*People v. Karaman* (1992) 4 Cal.4th 335, 344, fn. 9 . . . .) Section 1170, subdivision (d)(1) authorized the trial court, based on the secretary's recommendation, to recall defendant's sentence and enter a new sentence. Because a resentencing under section 1170, subdivision (d)(1) replaces the original sentence, the original sentence is no longer operative, and the finality of the original sentence is no longer material. The only sentence that matters after resentencing under section 1170, subdivision (d)(1) is the new sentence, which is not final because a resentenced defendant can still obtain review from the California Supreme Court or the United States Supreme Court." (*People v. Lopez* (2020) 56 Cal.App.5th 835, 845; contra, *People v. Federico* (2020) 50 Cal.App.5th 318, 328, review granted Aug. 26, 2020, S263082 [finding resentencing under § 1170, subd. (d)(1) does not reopen finality of original sentence].) Accordingly, defendant is entitled to the ameliorative benefits of Proposition 57 and Senate Bill No. 1391, as stated in Welfare and Institutions Code section 707, subdivision (a). Because defendant's judgment is no longer final on appeal, he is also entitled to the ameliorative benefit of Senate Bill No. 620, as stated in section 12022.53, subdivision (h). (*People v. Robbins* (2018) 19 Cal.App.5th 660, 678–679; *People v. Woods* (2018) 19 Cal.App.5th 1080, 1090–1091.)

The appropriate remedy is a remand to the trial court with directions for the matter to be transferred to the juvenile court for a juvenile adjudication. (See *Lara, supra*, 4 Cal.5th at p. 310

[if juvenile court does not transfer the case to adult court, then juvenile court "'shall treat [the defendant's] convictions as juvenile adjudications and impose an appropriate "disposition" within its discretion'"].)[6]

---

[6]     We observe that our opinion does not require defendant's *automatic* release from custody.  Under Welfare and Institutions Code section 607, subdivision (g)(2), "A person who, at the time of adjudication of a crime or crimes, would, in criminal court, have faced an aggregate sentence of seven years or more, shall be discharged upon the expiration of a two-year period of control, or when the person attains 25 years of age, whichever occurs later, unless an order for further detention has been made by the committing court pursuant to Article 6 (commencing with [Welfare and Institutions Code s]ection 1800) of Chapter 1 of Division 2.5."  Welfare and Institutions Code section 1800, subdivision (a) permits the Director of the Division of Juvenile Justice to ask a prosecuting attorney to file a petition for a person who "would be physically dangerous to the public because of the person's mental or physical deficiency, disorder, or abnormality that causes the person to have serious difficulty controlling his or her dangerous behavior."  (See also *Alexander C., supra*, 34 Cal.App.5th at pp. 1001–1002 ["in signing [Senate Bill No.] 1391, the Governor 'considered the fact that young people adjudicated in juvenile court can be held beyond their original sentence' under [Welfare and Institutions Code] section 1800"].)

## IV.  DISPOSITION

The postjudgment order is reversed.  The matter is remanded to the trial court with directions to transfer the matter to the juvenile court for a juvenile adjudication consistent with this opinion.

KIM, J.

I concur:

RUBIN, P. J.

The People v. Vincent Hwang
B301972


BAKER, J., Concurring in Part and Dissenting in Part


Defendant Vincent Hwang (defendant) committed many serious crimes: two attempted murders, possession of ingredients to make a destructive device, possession of an assault weapon—and that isn't even the half of it. (The majority catalogs all nine convictions.) He was 15 years old at the time, but he was tried and convicted in a court of criminal jurisdiction, often described colloquially as "adult court." He was ordered to serve 64 years to life in prison after correction of an initial sentencing error.

Almost two decades after defendant committed his offenses, he filed a motion to capitalize on recent changes in juvenile criminal law implemented by the Public Safety and Rehabilitation Act of 2016 (Proposition 57) and Senate Bill No. 1391 (2017-2018 Reg. Sess.). Defendant—34 years old by that time—argued these recent constitutional and statutory changes applied retroactively to him and required automatic reversal of all of his criminal convictions merely because they were rendered in adult court.

The majority embraces this argument in full. That is a mistake. Defendant is entitled to retroactive Proposition 57 relief, but Senate Bill 1391, by its own terms, is not meant to apply to someone like defendant who is made the subject of juvenile court proceedings well past the time at which he would come under the age threshold for juvenile court jurisdiction. In

1

other words, defendant is entitled to a conditional reversal to permit a juvenile court judge to decide whether prosecution as an adult is appropriate, but the Legislature did not intend to immediately throw open the prison doors for someone his age without any further process.

I

"'Historically, a child could be tried in criminal court only after a judicial determination, before jeopardy attached, that he or she was unfit to be dealt with under juvenile court law.  Since 1975 the procedural requirements for fitness hearings have been established by [Welfare and Institutions Code] section 707.'  [Citation.]  The general rule used to be that 'any individual less than 18 years of age who violates the criminal law comes within the jurisdiction of the juvenile court, which may adjudge such an individual a ward of the court.'  [Citation.]

"Amendments to former [Welfare and Institutions Code] sections 602 and 707 in 1999 and 2000, some by initiative, changed this historical rule.  Under the changes, in specified circumstances, prosecutors were permitted, and sometimes required, to file charges against a juvenile directly in criminal court, where the juvenile would be treated as an adult.  [Citations.]  These provisions were in effect when the prosecution filed the charges against defendant directly in criminal court.

"Proposition 57 changed the procedure again, and largely returned California to the historical rule.  'Among other provisions, Proposition 57 amended the Welfare and Institutions Code so as to eliminate direct filing by prosecutors.  Certain categories of minors . . . can still be tried in criminal court, but only after a juvenile court judge conducts a transfer hearing to

2

consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated. (Welf. & Inst. Code, § 707, subd. (a)(1).)' [Citation.]" (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 305-306 (*Lara*).)

I agree Proposition 57's elimination of prosecutors' direct file authority is an ameliorative change that retroactively benefits defendant because his conviction was not final at the time of Proposition 57's enactment. (*People v. Lopez* (2020) 56 Cal.App.5th 835, 845 ["Because a resentencing under [Penal Code] section 1170, subdivision (d)(1) replaces the original sentence, the original sentence is no longer operative, and the finality of the original sentence is no longer material. The only sentence that matters after resentencing under [Penal Code] section 1170, subdivision (d)(1) is the new sentence, which is not final because a resentenced defendant can still obtain review from the California Supreme Court or the United States Supreme Court"]; *Lara, supra*, 4 Cal.5th at 304, 312-313 [Proposition 57's elimination of direct file authority "applies to all juveniles charged directly in adult court whose judgment was not final at the time it was enacted" and requires a remand for a transfer hearing].) That means defendant is entitled to a hearing where a judge would decide whether his prosecution in adult court is appropriate considering (1) the degree of criminal sophistication he exhibited, (2) whether he can be rehabilitated prior to the expiration of the juvenile court's jurisdiction, (3) his previous delinquent history, (4) the success of any previous attempts by the juvenile court to rehabilitate him, and (5) the circumstances and gravity of the offenses he was found to have committed. (Welf. & Inst. Code, § 707, subd. (a)(3).)

When applied retroactively, the second of the factors just recited (whether a defendant can be rehabilitated prior to the expiration of juvenile court jurisdiction) will many times point in the direction of finding the defendant suitable for prosecution in adult court. That is because juvenile court jurisdiction expires when an offender reaches age 25 at the latest (Welf. & Inst. Code, § 607; *K.C. v. Superior Court* (2018) 24 Cal.App.5th 1001, 1011), and defendants seeking retroactive Proposition 57 relief can be (as defendant is here) too old to be rehabilitated in the juvenile court system. But this second factor is not by itself dispositive; a juvenile court must make a transfer determination considering all five of the Welfare and Institutions Code section 707, subdivision (a)(3) criteria. And a defendant may seek review in this court of any adverse determination the juvenile court might make.

## II

Following the procedure just described is what should happen in this case. But the majority authorizes defendant's immediate release from prison because it believes Senate Bill 1391's amendments to the Welfare and Institutions Code apply retroactively to him, just as Proposition 57 does.[1] I agree Senate

---

[1] I have some doubt about the majority's decision to frame the question as one of retroactivity. Even if we treat the amendments Senate Bill 1391 made to the Welfare and Institutions Code (that post-date defendant's convictions) as operative when deciding this appeal, there still remains the question of whether the Welfare and Institutions Code as so amended benefits defendant. On the other hand, and in fairness, the question of whether the statutory amendments are ameliorative as applied to defendant does sound like a

4

Bill 1391 will apply retroactively in many cases and foreclose any possibility of holding a transfer hearing.  But not this case.  A key proviso in the amendments Senate Bill 1391 made to the Welfare and Institutions Code indicates the Legislature did not intend to preclude the People from filing a transfer motion for an offender who was 14 or 15 years old at the time of the offense but has aged beyond the limits of juvenile court jurisdiction by the time a court is called to consider whether adult court prosecution is warranted.

Under current law, Welfare and Institutions Code section 707, subdivision (a)(1) generally permits the People to move to transfer a minor offender to adult court only when the minor is at least 16 years old.  The statute's next subdivision, however, was added to the code by Senate Bill 1391 and functions as an exception to this general rule.  (Welf. & Inst. Code, § 707, subd. (a)(2) (Subdivision (a)(2)).)  Subdivision (a)(2) states, in relevant part:  "In any case in which an individual is alleged to be a person described in Section 602 by reason of the violation, when he or she was 14 or 15 years of age, of any offense listed in subdivision (b), *but was not apprehended prior to the end of juvenile court jurisdiction*, the district attorney or other appropriate prosecuting officer may make a motion to transfer the individual

---

retroactivity question.  (See, e.g., *People v. Conley* (2016) 63 Cal.4th 646, 657 ["The *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible . . ."] (*Conley*).)  Ultimately, for purposes of this opinion, I accept the majority's framing to better highlight our contrasting views.

from juvenile court to a court of criminal jurisdiction.  The motion shall be made prior to the attachment of jeopardy."  (Emphasis mine.)  In other words, even though motions to transfer an offender to adult court are usually permitted only for offenders who are at least 16 years old, a transfer motion can still be made for an offender who was 15 years old at the time of his crime(s) if the offender is apprehended after he has reached an age that puts him beyond the reach of juvenile rehabilitation.

As recent retroactivity decisions by our Supreme Court explain, the presumption that the Legislature intends an ameliorative penal statute to apply retroactively does not obtain when there are reliable indications the Legislature has intended to modify or limit retroactive application.  (*Conley*, *supra*, 63 Cal.4th at 656-657 ["Our cases do not 'dictate to legislative drafters the forms in which laws must be written' to express an intent to modify or limit the retroactive effect of an ameliorative change; rather, they require 'that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it'"]; see also *People v. Frahs* (2020) 9 Cal.5th 618, 628.)  The "but was not apprehended prior to the end of juvenile court jurisdiction" language in Subdivision (a)(2) is just such a discernable demonstration of intent.  This language indicates the Legislature understood there may be cases where an offender commits a crime at age 15 but years go by before he or she can be dealt with by the juvenile justice system.  For those offenders, like defendant, the Legislature determined the People

6

should retain the ability to file a transfer motion because the offender in question cannot benefit from juvenile rehabilitation.[2]

---

[2] Legislative committee reports for Senate Bill 1391 are replete with references to the desire to keep young offenders in the juvenile justice system so they get the treatment, counseling, and education to develop into law-abiding adults. (See, e.g., Off. of Assem. Floor Analyses, 3d reading analyses of Sen. Bill No. 1391 (2017-2018 Reg. Sess.) as amended Aug. 20, 2018, p. 4 [quoting Senate Bill 1391's author: "The youngest teens in our justice system need to be held accountable for their actions, but they also require age-appropriate services and programs to rehabilitate and grow into healthy, mature adults. Keeping youth in the juvenile system does not mean they get off with a slap on the wrist. This bill still maintains that youth who commit serious crimes deserve punishment. Keeping youth in the juvenile justice system means they will be punished, but they will also be required to be in treatment, counseling, and rehabilitative programming and education"]; see also Sen. Rules Com., Off. of Sen. Floor Analyses, Sen. Bill No. 1391 (2017-2018 Reg. Sess.), as amended Aug. 20, 2018, p. 2 [noting Assembly amendments permit a prosecutor to make a motion to transfer a 14 or 15-year-old offender if the individual was not apprehended prior to the end of juvenile court jurisdiction].) This focus on treatment and rehabilitation for "youth" well explains why the language of significance here was included.

The majority nonetheless asserts the legislative history materials do "not specify *why* the 'not apprehended' clause was included in Welfare and Institutions Code section 707, subdivision (a)(2)." (Emphasis in original.) With respect, the majority does not look hard enough. The "not apprehended" language is obviously a temporal limitation, and the majority offers no plausible reason—indeed, no reason at all—why the Legislature would have been concerned with an offender's apprehension date that is different from the conclusion I draw, namely, the intention not to entirely foreclose adult prosecution

7

I do acknowledge the Legislature, with its use of the word "apprehended" in Subdivision (a)(2), does not appear to have foreseen the precise scenario that retroactive application of Senate Bill 1391 presents in this case. That is understandable; the most common scenario for application of Subdivision (a)(2) that would arise in future years is the one the Legislature did consider: an offender who is arrested years after a crime committed at a younger age. But the Legislature's intent in that scenario and in this one is still the same: an offender who was 14 or 15 at the time of the crime but who cannot benefit from juvenile justice system treatment by the time he or she is brought before the juvenile courts can still be an appropriate subject of adult court prosecution—if the People seek it and a judge approves.

So it is not enough to hang one's hat, as the majority does, on the assertion that the statute says "apprehended" and someone like defendant is not "apprehended" when his convictions are reversed retroactively and he is returned to juvenile court. A legislative body cannot reasonably be expected to anticipate all possible scenarios that might arise when the law changes. That is why our Supreme Court has held the Legislature need only "'demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.'" (*Conley*, *supra*, 63 Cal.4th at 657.) The Legislature's intent to limit *automatic* relief for a now 35-year-old felon who cannot

_____

for someone who would have aged beyond the point at which he or she could benefit from juvenile justice rehabilitative services.

benefit from juvenile justice system rehabilitation is sufficiently clear.[3]

I would accordingly reverse the trial court's order and remand for a transfer hearing, if the People so request (and, if transfer is found appropriate, to give the trial court an opportunity to consider whether defendant's firearm enhancements should be stricken).


BAKER, J.

---

[3]     The majority opines a juvenile court could still order defendant's continued detention (see generally Welf. & Inst. Code, § 1800 et seq.).  That is a question I need not and do not decide, but it is clear the majority's resolution of this appeal irretrievably wipes out defendant's prison sentence.  That is automatic relief and, I submit, relief the Legislature did not intend.